UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____ X

CLAIRMONT DONALD,

            Plaintiff,

      -against-

Sergeant S. LEONARD, et al.,

           Defendant(s).

_____ X

9:22-CV-00793 (BKS)(FH)
PLAINTIFF'S AFFIRMATION
IN OPPOSITION TO
DEFENDANT'S RULE
56 MOTION

FILED
JUL 2 6 2024
AT_____O'CLOCK_____
John M. Domurad, Clerk - Syracuse
U.S. DISTRICT COURT - N.D. OF N.Y.

STATE OF NEW YORK  )
                 ) ss.:
County of Sullivan )

    1) I, Clairmont Donald, am the Plaintiff proceeding Pro-se in the above-entitled action.

    2) I am familiar with the facts and all proceedings previously had herein.

    3) The above action was commenced on July 27, 2022. (See ECF No. 1).

    4) On or about September 6, 2022 ("The September Order - ECF No. 6) The Court issued a Decision and Order that found Plaintiff's Eighth Amendment claims against Defendant(s) Leonard, Sgt. Doe and John Does 1 through 12 survived sua sponte review and require a response.

    5) On or about October 27, 2022 defendant S. Leonard through his counsel filed an answer to the Pro-se complaint (See ECN No. 13).

    6) On or about October 27, 2022 the assigned United States Magistrate, Honorable Christian F. Hummell, issued the mandatory Pre-trial Discovery and Scheduling Order in Civil Rights Actions brought by Incarcerated Individuals Pro-se (See ECF No. 14).

7) Although discovery has closed due to the Scheduling Order, Defendants have never answered the exhibit discovery demands dated September 26, 2023; September 30, 2023, and; December 9, 2023 (See attached Exhibit A).

8) The complaint inter alia, alleges that on September 27, 2019, that an education teacher at Great Meadow Correctional Facility fabricated allegations and charges against the Plaintiff, that he cut her ("King") on her thigh with a ("box cutter"). The teacher reported the incident to the area Correctional Officer. Within two to three minutes, Plaintiff was ordered to step outside the class room near the Correctional Officer's desk. When Plaintiff stepped outside the class room, handcuffs were placed on his hands. Soon thereafter, approximately ten to twelve Correctional Officers proceeded to brutally physically assault the Plaintiff by punching him, using their batons, kicked Plaintiff in his ribs and stomach area. While in restraints, Plaintiff was unwarrantly thrown down a full flight of stairs. He was escorted to the clinic, ordered all medical staff to leave the room, continuously physically assaulted him, at one point placing a bag over his head in effort to stop his breathing. Plaintiff ended up with fractured back, his left leg injured, left foot is twisted when Plaintiff walks (See attached as Exhibit 2 Medical Records).

9) In Defendant's answer, Paragraph 1, Page 1, they (he) denies that Defendant's actions were in any way contrary to Constitutional, Statutory, regulatory, or case law, and denies Plaintiff is due to the relief he seeks.

10) Given the extent of Plaintiff's physical injuries from the incident and the fact that it was discovered that "Teacher King" lied, was arrested, and charged to which she later pled guilty is evidence upon itself that the use of force by Defendant's was excessive and intended as being punishment.

11) On or about September 27, 2019, Plaintiff met with an investigator with the Department of Corrections and Community Supervision - Office of Special Investigations.

12) As a result of this meeting, for his own safety, was transferred to Clinton Correctional Facility.

13) There is a clear contradiction as to the allegations made by Plaintiff, Exhibits attached hereto, and what the Defendants have alleged in their answer to the pleading and their moving papers for the instant motions that they acted within the law. Only a trier of fact can evaluate the weight of conflicting evidence.

WHEREFORE, Plaintiff requests the Court to deny Defendant's motion for Summary Judgment in it's entirety and place the action on the trial calendar.


Dated: July 22, 2024
Fallsburg, N.Y.

Respectfully submitted,

Clairmont Donald, 18-A-2991
Sullivan Correctional Facility
325 Riverside Drive
P.O. Box 116
Fallsburg, N.Y. 12733-0116
Plaintiff, Pro-se

I declare pursuant to 28 U.S.C.A. § 1746, that the foregoing is true to the best of my knowledge of my personal knowledge and as to those things stated upon information and belief. I believe them to be true under the penalties of perjury.

Clairmont Donald, 18-A-2991
Plaintiff, Pro-se

## AFFIRMATION OF SERVICE

STATE OF NEW YORK )
               ) ss.:
COUNTY OF SULLIVAN)


I, __Clairmont Donald, 18-A-2991__, being duly sworn, deposes and says:

On the __22__ day of __July__, 2024, I served a true copy of the attached:

__Plaintiff's Affirmation in opposition to Defendant's Rule 56 Motion__

__Plaintiff's statement to Rule 56, and Plaintiff's opposition to Defendants__

by mailing the same in a sealed envelope, with postage prepaid in an official depository for the US Postal Service within Sullivan CF in the State of New York, to the following:

Clerk of the Court

United States District Court

Northern District of New York
100 S. Clinton St. P.O. Box 7367

Syracuse, N.Y. 13261 - 7367


Mr. Nicholas W. Dorando, Esq.

Assistant Attorney General

Division of State Counsel
The Capitol

Albany, N.Y. 12224-0341


I affirm this __22__ day of __July__, 2024, under the penalties of perjury under the laws of New York, that the foregoing is true, and I understand that this document will be filed in an action or proceeding in a court of law (CPLR §2106).


*Clairmont Donald*
Clairmont Donald, 18-A-2991
Sullivan Correctional Facility
325 Riverside Drive, P.O. Box 116
Fallsburg, N.Y. 12733-0116

# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT FOR NEW YORK
-------------------------------------------------------- X
DONALD CLAIRMONT,
                 Plaintiff,

        - against -

GREAT MEADOWS C.F., et al..
                Defendants.
-------------------------------------------------------- X

**REQUEST FOR
INTERROGATORIES AND
DOCUMENTS (1st SET)**

**22-CV-0793(BKS)(CFH)**

       Pursuant to FRCP 26, 33 and 34, Plaintiff Donald Clairmont, requests that Defendants make available for inspection and copying the documents described in this request at Sullivan Correctional Facility – 325 Riverside Drive – P.O. Box 116 – Fallsburg, New York 12733, but in no event later than thirty days from the date of this request.

       If a document is no longer in possession or subject to the control of Defendants, state when such documents were most recently in the possession of or subject to the defendant's control and what disposition was made of it. If documents have been destroyed, please identify when they were destroyed, the person who destroyed them, the person who directed that they be destroyed, the reason(s) for such action and any communications or documents which relate or refer to the destruction of the documents.

       This request is continuing in character and requires Defendants to provide any supplemental documents if, prior to trial, Defendants should obtain any additional or supplemental documents responsive to this request.

**Documents Requested**
1)     Body Worn Camera Footage (September 27, 2019)
2)     Directive #2110 (Discipline, employee)
3)     Directive #2111 (Employee misconduct, report of)
4)     Directive #2113 (M/C employees, grievances)
5)     Directive #2115 (Drug tests for employees)
6)     Directive #2602 (Complaints, Employee Discrimination)
7)     Directive #4004 (Unusual Incident)
8)     Directive #4091 (Logbooks)
9)     Directive #4942 (Fixed Video Monitoring System)
10)     Directive #4943 (Body Worn Camera)

11)   Directive #6930 (Preservation of evidence, Service of legal process)
12)   Disciplinary and Personnel Records of:
- C.O. LaFountain
- Sgt. Scott W. Leonard
- Lt. D. Atty
- M. King (Teacher)
- J. Cavaretta (OSI Investigator)
- J. Pratt (OSI Investigator)
13)   Fixed Camera Footage (September 27, 2019)
14)   Investigation Reports
15)   NYSDOCCS Employee Manual (2019)
16)   OSI Reports
17)   Plaintiff's medical records (September 27, 2019 - present)
        If any of the medical records are illegible to the average person, that the
        records be transcribed to a computer printout by each medical staff person(s)
        that made the illegible written entries.
18)   Plastic Bag that was used to suffocate Plaintiff
19)   Police Reports
20)   To: From:
21)   Unusual Incident Report
22)   Witness Statements

**Interrogatories**
1)   Was anyone else issued a misbehavior report for the assault on M. King? If
      so, please produce the misbehavior report.
2)   Was anyone else arrested for the assault on M. King? If so, please produce
      the documentation of the arrest report.
3)   Was a fingerprint or DNA test conducted on the weapon found?
      If so, please provide a copy of the test results.

All documents identified or requested to be identified or produced in the answers
to the accompanying Plaintiff's interrogatories, First Set, designating to which
interrogatory each document is responsive.

Dated:  September 26, 2023

_Clairmont Donald_

Donald Clairmont

To: Nicholas W. Dorando
Assistant Attorney General
The Capitol
Albany, New York 12224

# EXHIBIT B

Donald Clairmont
DIN: 18-A-2991
Sullivan C.F.
P.O. Box 116
Fallsburg, New York 12733

September 30, 2023

Nicholas W. Dorando
Assistant Attorney General
The Capitol
Albany, New York 12224

Re:   ***Donald v. Great Meadow C.F., et al.***
      9:22-cv-00793 (BKS)(CFH)

      Please be advised that I am enclosing an amended discovery request. I have bolded the additions made from my initial request for your convenience.

      Thank you for your time and efforts in this matter.

# EXHIBIT C

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT FOR NEW YORK
------------------------------------------------------- X
DONALD CLAIRMONT,
              Plaintiff,

     - against -

GREAT MEADOWS C.F., et al.,
              Defendants.
------------------------------------------------------- X

**REQUEST FOR
INTERROGATORIES AND
DOCUMENTS (1ˢᵗ SET)**

**22-CV-0793(BKS)(CFH)**

       Pursuant to FRCP 26, 33 and 34, Plaintiff Donald Clairmont, requests that Defendants make available for inspection and copying the documents described in this request at Sullivan Correctional Facility – 325 Riverside Drive – P.O. Box 116 – Fallsburg, New York 12733, but in no event later than thirty days from the date of this request.

       If a document is no longer in possession or subject to the control of Defendants, state when such documents were most recently in the possession of or subject to the defendant's control and what disposition was made of it. If documents have been destroyed, please identify when they were destroyed, the person who destroyed them, the person who directed that they be destroyed, the reason(s) for such action and any communications or documents which relate or refer to the destruction of the documents.

       This request is continuing in character and requires Defendants to provide any supplemental documents if, prior to trial, Defendants should obtain any additional or supplemental documents responsive to this request.

**Documents Requested**
1)     Body Worn Camera Footage (September 27, 2019)
2)     Directive #2110 (Discipline, employee)
3)     Directive #2111 (Employee misconduct, report of)
4)     Directive #2113 (M/C employees, grievances)
5)     Directive #2115 (Drug tests for employees)
6)     Directive #2602 (Complaints, Employee Discrimination)
7)     Directive #4004 (Unusual Incident)
8)     Directive #4091 (Logbooks)
9)     Directive #4942 (Fixed Video Monitoring System)
10)    Directive #4943 (Body Worn Camera)

11)  Directive #6930 (Preservation of evidence, Service of legal process)
12)  Disciplinary and Personnel Records of:
- C.O. T. LaFountain
- **C.O. H. Philhower**
- Sgt. Scott W. Leonard
- Lt. D. Atty
- M. King (Teacher)
- J. Cavaretta (OSI Investigator)
- J. Pratt (OSI Investigator)

13)  Fixed Camera Footage (September 27, 2019)
14)  Investigation Reports
15)  **2 - Misbehavior Reports (September 27, 2019), Hearing Packets, Superintendent Hearing Dispositions Rendered**
16)  NYSDOCCS Employee Manual (2019)
17)  OSI Reports
18)  Plaintiff's medical records (September 27, 2019 - present)
      If any of the medical records are illegible to the average person, that the records be transcribed to a computer printout by each medical staff person(s) that made the illegible written entries.
19)  Plastic Bag that was used to suffocate Plaintiff
20)  Police Reports
21)  To: From:
22)  **Transfer request/transfer order (September 27, 2019)**
23)  Unusual Incident Report
24)  Witness Statements

**Interrogatories**

1)  Was anyone else issued a misbehavior report for the assault on M. King? If so, please produce the misbehavior report.
2)  Was anyone else arrested for the assault on M. King? If so, please produce the documentation of the arrest report.
3)  Was a fingerprint or DNA test conducted on the weapon found?
     If so, please provide a copy of the test results.

All documents identified or requested to be identified or produced in the answers to the accompanying Plaintiff's interrogatories, First Set, designating to which interrogatory each document is responsive.

Dated:  September 26, 2023

_Sloinen Donald_
Donald Clairmont

To:  Nicholas W. Dorando
     Assistant Attorney General
     The Capitol
     Albany, New York 12224

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____X

CLAIRMONT DONALD,

        Plaintiff,

    -against-

Sergeant S. LEONARD, et al.,

        Defendant(s).

_____X

                              9:22-CV-00793 (BKS)(FH)
                              PLAINTIFF'S STATEMENT
                              PURSUANT TO L.R. §56.1

## STATEMENT PURSUANT TO RULE 56

Pursuant to Rule 56.1 of Local Rules of this Court, Plaintiff undisputes Defendant's contentions styled as numbered 1; 2; 3; 4; 6; and 10.

### No. 5:

Great Meadow Correctional Facility ("Great Meadow") and Clinton Correctional Facility ("Clinton") currently maintain logs of all grievances filed by Incarcerated Individuals, Declaration of Alexandria Cutler ("Cutler Decl.") at ¶'s 11-12, and 16; Declaration of Donna Wilcox ("Wilcox Decl.") at ¶'s 11-12, and 16; see also, ECF No. 1.

### Plaintiff's Response:

Plaintiff disputes this assertion to the extent that a genuine issue exists as to where the two Department of Corrections and Community Supervision Facility maintain their administrative records identically.

### No. 7 Disputed):

Plaintiff's allegations in this matter are proper subjects for a grievance under the D.O.C.C.S. grievance procedures outlined in 7 N.Y.C.R.R. §701.1 ct. seq. Decl. at 7.10, Wilcox Decl. at 715.19, and Cutler Decl. at 716.19.

<u>Plaintiff's Response</u>:

A genuine issue of facts exists as to whether the I.G.R.C. process as outlines in 7 N.Y.C.R.R. § 701.1 ct. seq. are safe and effective mechanism to raise questions of D.O.C.C.S. employees serious misconduct and allegations of physical assault. The I.G.R.C. is not an adversal process.

<u>No. 8 (Undisputed with clarification)</u>:

Plaintiff did not file any facility - level grievances at Great Meadow or Clinton between the time period of September and November of 2019.

<u>Plaintiff's Response</u>:

Plaintiff filed an excessive use of force claim with the Office of Special Investigation for the Department of Corrections and Community Supervision resulting in Plaintiff's immediate transfer from Great Meadow to Clinton Correctional Facility. A complaint to be filed with the Incarcerated Grievance Committee would be moot, due to the fact there was no remedy obtainable.


Dated: July 22, 2024
Fallsburg, N.Y.

                                        Respectfully submitted,


                                        _Clairmont Donald_
                                        Clairmont Donald, 18-A-2991
                                        Sullivan Correctional Facility
                                        325 Riverside Drive
                                        P.O. Box 116
                                        Fallsburg, N.Y. 12733-0116
                                        Plaintiff, Pro-Se

EXHIBIT D

| NEW YORK STATE **Corrections and Community Supervision** **DIRECTIVE** | TITLE **Incarcerated Grievance Program** | | NO. 4040 |
|---|---|---|---|
| | | | DATE 1/20/2016 |
| SUPERSEDES DIR# 4040 Dtd. 07/12/2006 | DISTRIBUTION A B | PAGES PAGE 1 OF 18 | DATE LAST REVISED |
| REFERENCES (Include but are not limited to) Correction Law, Section 139; 9 NYCRR Part 7695; Prison Rape Elimination Act | APPROVING AUTHORITY Anne Marie McGrath | | |

## § 701.1 Purpose.

(a)   The incarcerated grievance program (IGP) provides each incarcerated individual an orderly, fair, simple, and expeditious method for resolving grievances, pursuant to Section 139 of the Correction Law, and allegations of discriminatory treatment, pursuant to Part 7695 of Title 9, NYCRR.

(b)   This program is intended to supplement, not replace, existing formal or informal channels of problem resolution as set forth in Section 701.3(a) of this Part.  It is not intended to support an adversary process, but to promote mediation and conflict reduction in the resolution of grievances.

(c)   This program enables any incarcerated individual who is personally affected by an issue for which there is no avenue for redress or correction to seek resolution of a complaint through a facility committee of elected peers and appointed staff members: the Incarcerated Grievance Resolution Committee (IGRC).  If not satisfied, an incarcerated individual may appeal to the facility Superintendent; if still not satisfied, an incarcerated individual may appeal to a committee of Central Office staff acting on behalf of the Commissioner: the Central Office Review Committee (CORC).

(d)   Facilities such as camps, shock incarceration correctional facilities, alcohol and substance abuse treatment centers, and work release facilities may follow the modified plan set forth in Directive #4041, "Incarcerated Grievance Program – Modification Plan," when approved by the Director, IGP.

## § 701.2 Definitions.

(a)   *Grievance* - a complaint, filed with an IGP clerk, about the substance or application of any written or unwritten policy, regulation, procedure, or rule of the Department of Corrections and Community Supervision or any of its program units, or the lack of a policy, regulation, procedure or rule.  A letter addressed to facility or Central Office staff is not a grievance.

(b)   *Departmental grievance* - a grievance which affects an incarcerated individual during his or her confinement at various facilities throughout the Department.

(c)   *Institutional grievance* - a grievance in which the grievant is only affected as long as he or she remains a resident of the facility in which the grievance is filed.

(d)   *Like grievances* - those grievances emanating from a substantially similar situation/issue or with a similar action requested, or complaints which could be resolved with the same action.

(e)   *Harassment grievances* - those grievances that allege employee misconduct meant to annoy, intimidate, or harm an incarcerated individual.

(f)    *Unlawful discrimination grievances* - those grievances that allege acts or policies which adversely affect individuals based on race, religion, national origin, sex, sexual orientation, age, disabling condition(s), or political belief, except as provided by law.

(g)    *Strip search or strip frisk grievances* - those grievances that allege violations of Departmental policy regarding strip searches or strip frisks.

(h)    *Advisor* - a person who assists the grievant in filing, preparing, or expressing the grievant's complaint.  An advisor is not a substitute grievant.  An advisor is not needed to argue a case since the grievance procedure is not adversarial.  An advisor is not needed to appeal a grievance; that is a simple procedure requiring only that the grievant contact the grievance clerk.  An advisor is not a direct party to a grievance.  Staff members from the IGRC or from the facility at large may serve as advisors.  Staff members must be willing to accept this function.

(i)    *Direct party* - an individual so uniquely affected by the grievance that fair play dictates that he or she should be afforded an opportunity to provide input prior to any decision and also to appeal any disposition rendered.  In harassment allegations, the employee who allegedly committed the misconduct is a direct party.

(j)    *Definitions related to Sexual Abuse and Sexual Harassment* - the terms *sexual abuse* and *sexual harassment* shall have the definitions as set forth in the Prison Rape Elimination Act (PREA) Standards (28 C.F.R. §115.06).

## § 701.3 General policies

(a)    *Incarcerated individual's responsibility.*  An incarcerated individual is encouraged to resolve his or her complaints through the Guidance and Counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance.  Although a facility may not impose pre-conditions for submission of a grievance, the failure of an incarcerated individual to attempt to resolve a problem on his or her own may result in the dismissal and closing of a grievance at an IGRC hearing.

(b)    *Grievances must be personal.*  An incarcerated individual must be personally affected by the policy or issue he or she is grieving, or must show that he or she will be personally affected by that policy or issue unless some relief is granted or changes made.  All grievances must be filed in an individual capacity.

(c)    *Visitor complaints.*  Visitor complaints shall be processed via the Office of Diversity Management in accordance with Directive #2611, "Discriminatory Treatment Complaints – Procedures for Visitors."

(d)    *Class actions not accepted.*   Individuals personally affected by a matter which affects a class of incarcerated individuals may only file a grievance on their own behalf.  Grievances which are raised in terms of class actions should be referred to the Incarcerated Liaison Committee.

(e)    *Non-grievable issues.*

(1)    An individual decision or disposition of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered non-grievable.

(2)    An individual decision or disposition of the temporary release committee, time allowance committee, family reunion program, or media review committee is not grievable. Likewise, an individual decision or disposition resulting from a disciplinary proceeding, incarcerated individual property claim (of any amount), central monitoring case review, or records review (freedom of information request, expunction) is not grievable. In addition, an individual decision or disposition of the Commissioner, or designee, on a foreign national prisoner application for international transfer is not grievable.

(3)    The policies, rules, and procedures of any program or procedure, including those above, are grievable.

Note:  If an incarcerated individual is unsure whether an issue is grievable, he or she should file a grievance and the question will be decided through the grievance process in accordance with Section 701.5, below.

(f)    *Outside agencies excluded.*  Any policy, regulation, or rule of an outside agency (e.g., the Division of Parole, Immigration and Customs Enforcement, the Office of Mental Health, etc.) or action taken by an entity not under the supervision of the Commissioner is not within the jurisdiction of the IGP.

(g)    *Reasonable accommodations.*  The IGP supervisor will ensure that disabled incarcerated individuals are provided the necessary assistance to facilitate their access to and use of the IGP. Reasonable accommodations shall include, but not be limited to, meetings with incarcerated individuals at accessible sites and the provision of qualified sign language interpreters for deaf and hard-of-hearing incarcerated individuals who use sign language to communicate. Copies of all grievance decisions concerning reasonable accommodations for disabled incarcerated individuals shall be sent to the ADA coordinator in Central Office.

(h)    *Language assistance services.*  Interpretation and translation services will be used to facilitate access to the IGP for those incarcerated individuals with Limited English Proficiency (LEP) (see Departmental Directive #4490, "Cultural and Language Access Services").

(i)    *Sexual Abuse and Sexual Harassment Complaints.*  The Department has zero tolerance for sexual abuse and sexual harassment. Consistent with this policy and the Prison Rape Elimination Act (PREA) Standards (28 C.F.R. § 115.52(a)), an incarcerated individual is not required to file a grievance concerning an alleged incident of sexual abuse or sexual harassment to satisfy the Prison Litigation Reform Act (PLRA) exhaustion requirement (42 U.S.C. § 1997e (a)) before bringing a lawsuit regarding an allegation of sexual abuse as long as the matter was reported as set forth below. For purposes of PREA Standards (28 C.F.R. § 115.52) and the exhaustion requirement, any allegation concerning an incident of sexual abuse or sexual harassment (see Departmental Directives #4027A, "Sexual Abuse Prevention & Intervention - Inmate-on-Inmate," and #4028A, "Sexual Abuse Prevention & Intervention - Staff-on-Inmate") shall be deemed exhausted if official documentation confirms that:

(1)    An incarcerated individual who alleges being the victim of sexual abuse or sexual harassment reported the incident to facility staff; in writing to Central Office staff; to any outside agency that the Department has identified as having agreed to receive and immediately forward incarcerated individual reports of sexual abuse and sexual harassment to agency officials under the PREA Standards (28 C.F.R. § 115.51(b)); or to the Department's Office of Special Investigations; or

(2)    A third party reported that an incarcerated individual is the victim of sexual abuse and the alleged victim confirmed the allegation upon investigation.

A sexual abuse or sexual harassment complaint may be submitted at any time, however, a timely complaint is essential to providing services and proper investigation.  Acceptance of a late complaint does not waive the applicable statute of limitations with respect to any related lawsuit.

Any incarcerated individual grievance filed regarding a complaint of sexual abuse or sexual harassment shall immediately be reported by the IGP Supervisor to the Watch Commander for further handling in accordance with Departmental policies.  The complaint shall be deemed exhausted upon filing for PLRA purposes.  If the grievance does not set forth any additional matters that require a response, the grievance shall be closed.

## § 701.4 Incarcerated Grievance Resolution Committee (IGRC)

 (a)    *Composition.*  Pursuant to Section 139 of the Correction Law, a facility's IGRC must be a five-member body consisting of two voting incarcerated individuals, two voting staff members, and a non-voting chairperson.  The non-voting chairperson may be an incarcerated individual, staff member, or a volunteer associated with the facility's program.  There shall be at least two alternate incarcerated representatives, two alternate staff representatives, and four non-voting chairpersons in each facility.

(1)    From time to time, or prior to the establishment of a new IGRC, the Superintendent shall determine whether an institution's size warrants additional alternates or non-voting chairpersons.

(2)    The IGP supervisor supervises and coordinates the IGP activities of each incarcerated and staff representative, clerk, and chairperson.

 (b)    *IGRC incarcerated representatives and clerks.*

(1)    *Minimum qualifications.*

(i)    An incarcerated individual must have completed high school or obtained a G.E.D. equivalency certificate to be eligible to function as an IGRC representative or clerk.

(ii)    An incarcerated individual testing above the eighth grade level is eligible to participate as an IGRC representative or clerk as long as he or she is enrolled in one unpaid module of school and remains enrolled in school until a G.E.D. certificate is earned.

(2)    *Selection of incarcerated Representatives.*  The incarcerated representatives and alternates shall be elected by their peers.

(i)    The IGP supervisor shall submit a nomination and election procedure for his or her facility to the Director, IGP, for approval.

(ii)    The approved nomination and election procedure shall be conspicuously posted five working days prior to nominations being held.

(3)    *Filling vacancies between elections.*

(i)    Alternate incarcerated representatives (those placing third or fourth in the most recent election) will be used to fill vacancies between elections.

(ii)    When there is a need for additional incarcerated representatives or alternate representatives to complete a term until the next regular election, the supervisor has the option of: exhausting the most recent election list in numerical sequence for representatives; having the current IGRC agree upon the appointment of a new representative who meets with the approval of the Superintendent; or holding another election.

(4)    *Incarcerated representative's tenure.*  An incarcerated representative's term shall be six months.  Representatives who are unseated will return to their former job assignments whenever feasible.  However, leave of absence from a former job assignment may not exceed seven months.  The incarcerated representative's position is a full-time assignment unless otherwise authorized in writing by the Director, IGP.

(c)    *Removal of incarcerated representatives.*

(1)    Before an elected incarcerated representative or an incarcerated representative who has permanently replaced an elected representative of the IGRC may be removed from his or her position on the committee or transferred to another facility, a limited due process hearing must be held.  When the incarcerated individual is served with the notice of charges, the notice must indicate that the affirmation of these charges may result in removal from the IGRC.  This hearing may be a disciplinary Tier III hearing or an IGRC impeachment hearing (procedurally the same as a Tier III hearing; see Part 254 of this Title).  The hearing determines whether or not the representative should be removed from his or her representative position and for how long he or she should be precluded from holding a representative position.  Although other sanctions may result from a disciplinary Tier III hearing, no other sanctions may result from an IGRC impeachment hearing.

(2)    If an elected incarcerated representative or incarcerated representative who has permanently replaced an elected representative of the IGRC requests a transfer out of his or her facility or reassignment to another program, the incarcerated individual must sign a resignation vacating the protection afforded the representatives prior to realizing that transfer or reassignment.

(3)    In order to prevent improper transfers of IGRC representatives, the following identification procedures must be followed:

(i)    The IGP supervisor or the Superintendent shall notify the following within 24 hours of an incarcerated individual's election or appointment as an IGRC representative:

    *(a)*    Director of the IGP

    *(b)*    Superintendent

    *(c)*    First Deputy Superintendent

    *(d)*    all Deputy Superintendents

    *(e)*    Inmate Records Coordinator

    *(f)*    Review Officer - disciplinary

(ii)    To identify an incarcerated individual as an IGRC representative and alert any reader that this incarcerated individual may not be transferred without a due process hearing, a conspicuous non-permanent marker shall be attached to or provided for:

(a)   the guidance and counseling unit folder;

(b)   the inmate records coordinator's office folder/card; and

(c)   the disciplinary office.

(iii)   When an incarcerated individual is no longer a full-time representative, the IGP supervisor or the Superintendent is responsible for notifying the individuals listed in subparagraph (i), above, and for removing the identifying marker from the locations listed in subparagraph (ii), above, within 24 hours.

(iv)   If an incarcerated representative's presence or conduct at a facility creates an emergency and transfer is immediately necessary to protect the facility or its personnel, the Superintendent shall notify the Superintendent of the receiving facility of the need to conduct the limited due-process hearing as soon as practicable, shall provide the Superintendent of the receiving facility with all documentation necessary to hold such a hearing, and shall notify the Director of the IGP of the transfer.  These actions shall be taken within 24 hours of the incarcerated representative's transfer.

(d)   *Staff IGRC representatives.*  Staff representatives and alternates shall be selected by the Superintendent from an established list of personnel who have successfully completed a training course designed specifically for individuals who will be serving as IGRC representatives.  In order for the IGP to function effectively and in accordance with specified time limits, the Superintendent must ensure that trained staff coverage is made available to the IGP.

(e)   *Representatives' Job Duties.*  Both the incarcerated and staff IGRC representatives are responsible for the job duties enumerated in the IGP Training Manual under the supervision of the IGP supervisor.

(f)   *IGRC chairperson selection.*  Chairpersons for IGRC hearings shall be selected by the IGP supervisor from a list submitted by the IGRC representatives.

(g)   *Grievance clerks.*

(1)   A grievance clerk and such additional clerks as may be needed shall be selected by the IGP supervisor after consultation with the Superintendent.

(2)   At the conclusion of their IGP assignments, clerks will be reinstated to their former job assignments whenever feasible.  Clerks may be reasonably assured of reinstatement for a period of 12 months.

(3)   The clerks shall report to and take direction from the IGP supervisor.

(4)   If the supervisor has personal knowledge or reliable information of adverse behavior on the part of a clerk, he or she shall recommend dismissal setting forth the reasons in writing to the Superintendent.  The Superintendent shall forward a recommendation, accompanied by a copy of the supervisor's report, to the Director of the IGP.  The clerk will be suspended pending the Director's decision.

| | NO. **4040,** Incarcerated Grievance Program |
|---|---|
| DATE  1/20/2016 | PAGE 7 OF 18 |

## § 701.5 Procedure.

Note: If an incarcerated individual is deaf or hard-of-hearing, any expression of difficulty in communicating or understanding shall be considered a request for assistance. Reasonable accommodations (including assignment of a sign language interpreter, if needed, and a grievance clerk) will be made to ensure the incarcerated individual's full access to all steps in the grievance process.

(a)  *Filing the complaint.*

(1)  *Time limit for filing.* An incarcerated individual must submit a complaint to the clerk within 21 calendar days of an alleged occurrence on an Incarcerated Grievance Complaint Form (Form #2131). If this form is not readily available, a complaint may be submitted on plain paper. The complaint may only be filed at the facility where the incarcerated individual is housed even if it pertains to another facility.

Note: Exceptions to this time limit or any appeal time limits may be approved by the IGP supervisor under Section 701.6(g), below.

(2)  *Contents.* In addition to the grievant's name, Department Identification Number (DIN), housing unit, program assignment, etc., the grievance should contain a concise, specific description of the problem and the action requested and indicate what actions the grievant has taken to resolve the complaint (e.g., specific persons/areas contacted and responses received). The IGP supervisor shall review the grievance complaint and designate the grievance code and title. If the IGP supervisor determines that the grievance may be a harassment, discrimination, or strip frisk/strip search grievance, it shall be processed in accordance with the respective expedited procedure (Section 701.8, .9, or .10, below). The clerk shall consecutively number and log each grievance at the time of receipt.

(3)  *Like grievances.* "Like grievances" may be consolidated at the option of the IGP supervisor or IGRC and assigned one grievance calendar number. The first complaint received will be given the next sequential grievance number in the clerk's log (Form #2136). The grievants shall select three or four spokespersons from their number to be grievants of record and to represent them at the hearing and to ensure expeditious processing of the cases. Any like complaint submitted at this time or during processing may be addressed under the same grievance calendar number. A list of the names of every incarcerated individual who submitted a complaint on the issue shall be included with the grievance materials and submitted with any appeal which may result. Every effort will be made to notify all of the grievants of the response at each level to which the grievance is appealed either by written response, posting on incarcerated individual bulletin boards, or radio announcement. Not every complainant may receive an individual written response, but the three or four grievants of record will. If none of the grievants of record appeal to the next level, any incarcerated individual who submitted a complaint may continue the appeal. Any incarcerated individual on the list of those submitting the complaint will be given the number of the grievance of record to submit to the court in order to verify exhaustion of the IGP.

(b) *First Step, IGRC*

(1) *Informal resolution*. The representatives of the IGRC shall have up to 16 calendar days after a grievance is filed to resolve it informally. If the matter is resolved to the satisfaction of the grievant, the resolution and the grievant's consent must be entered on the Incarcerated Individual Grievance Complaint Form.

(2) *IGRC hearing*.

(i) If there is no resolution, the full committee shall conduct a hearing to answer the grievance or make a recommendation to the Superintendent.

(ii) The clerk, together with the staff, shall schedule the hearing to take place within 16 calendar days after receipt of the grievance, making certain that the grievant and all direct parties and witnesses, if any, are afforded an opportunity to appear (except as exempted in Section 701.7(d), below).

(a) Any incarcerated individual whose confinement status precludes his or her attendance at an IGRC hearing and who will be released within 30 calendar days shall be given the option of having the hearing held in his or her absence or postponed until release from confinement. The grievant's decision shall be obtained in writing. If the grievant is not scheduled for release from confinement within 30 calendar days, the hearing shall be held in his or her absence. If any person elects not to appear, the clerk shall so inform the IGRC.

(b) If a grievant does not appear for the hearing without a legitimate reason (visit, parole hearing, program committee, sick call, keeplock, etc.), the IGRC will hold a hearing in absentia. The IGRC has the authority in this circumstance to dismiss and close the grievance by majority vote (3 of 4), or to make a recommendation on the action requested and forward same to the grievant.

(c) If a grievant misses three scheduled hearings due to legitimate reasons, the IGRC shall act on the grievance at the third scheduled hearing.

(iii) The full IGRC shall conduct the hearing at the time and place set. The grievant or his or her advisor and any other direct party to the grievance may present relevant information, comments, or other evidence in furtherance of their respective positions. The IGRC shall be the judge of the relevance and materiality of the evidence offered.

(3) *Committee decision/recommendation*.

(i) After the chairperson closes the hearing, the committee shall deliberate in private session. Its decision must be communicated to the grievant and any direct party, in writing with reasons stated, within two working days. In its discretion, the IGRC may also communicate its decision to the grievant orally immediately after its deliberations.

(ii) Matters which neither require Superintendent/Central Office action nor involve changes in policy may be resolved by agreement of the committee, the incarcerated individual, and the party directly affected. Committee decisions which do require Superintendent or Central Office action, including, but not limited to, changes in institutional or Departmental policy or procedure, shall be written in the form of recommendations and referred to the Superintendent.

Any matter on which the committee cannot reach a decision by majority vote shall also be referred to the Superintendent for action and response.

(4)  *Dismissals.*

(i)   The IGRC may dismiss and close a grievance after a hearing if it determines, by majority vote (3 of 4), that:

*(a)*  the grievant has made no effort to resolve the complaint through existing channels;

*(b)*  the grievant has not been or will not be personally affected by the issue in his or her complaint;

*(c)*  the grievant is seeking a decision or an appeal of a decision otherwise attainable through the established procedures for:

*(1)*  temporary release, family reunion, and media review programs,

*(2)*  disciplinary and time allowance committee proceedings,

*(3)*  central monitoring (CMC), incarcerated individual claims, or records review (freedom of information requests, expunction) procedures, or

*(4)*  any other program or procedure having a written appeal mechanism which extends review to outside the facility (see Section 701.3(e), above);

*(d)*  the grievant is seeking action with respect to any policy, regulation, rule, or action of an agency not under the supervision of the Commissioner of Corrections and Community Supervision (see Section 701.3(f), above); or

*(e)*  the grievance is institutional in nature and only affects or no longer affects a grievant who has been released or paroled (see Section 701.6(i), below).

(ii)   In such cases, the IGRC shall clearly cite the portions of this Section and of Sections 701.3(a), (b), (e) and (f) or Section 701.6(i) which provide the basis for dismissal, and shall, where appropriate, refer the grievant to appropriate existing mechanisms.

(iii)   If a grievant believes that a dismissal in his or her case is not authorized by this directive, he or she may apply directly to the facility IGP supervisor for review within seven calendar days after receipt of the IGRC's decision to dismiss the grievance. If the supervisor determines that the grievance does not fall into one of the categories cited in this Section, then the grievance will be returned to the IGRC for a hearing and recommendation. The supervisor's written response shall be forwarded to the grievant within seven calendar days of receipt. An incarcerated individual may pursue a complaint that the IGP supervisor failed to reinstate an improperly dismissed grievance by filing a separate grievance.

(iv)   If there is less than a majority vote to determine whether a complaint constitutes a grievable issue, the IGRC will hear the grievance and provide its recommendations with reasons stated on the specific requested action(s).

(c)  *Second step, appeal to the Superintendent.*

(1)   *Filing an appeal.* If the grievant or any direct party wishes to appeal to the Superintendent, he or she must complete and sign the appeal section on the IGRC response form (Form #2131) and submit it to the grievance clerk within seven calendar days after receipt of the IGRC's written response. If no appeal is filed upon denial by the IGRC, it will be presumed that the grievant or direct party accepts the committee's recommendation. An exception to this appeal time limit may be approved by the IGP supervisor under Section 701.6(g) below.

(2)   *Referral to the Superintendent.* In all cases where action by the Superintendent is required, the grievance papers and all relevant supplemental data shall be transmitted to the Superintendent. Such transmittal shall be within one working day after receipt of an appeal.

(3)   *Superintendent's action.* The Superintendent's office shall date stamp all grievances forwarded showing when they were received. The Superintendent or designee shall determine if the grievance is Departmental in nature.

(i)   *Departmental issue.* If a matter concerns an altering or revision of a Departmental policy/directive, the Superintendent shall promptly forward the grievance papers and a recommendation regarding said policy to the IGP supervisor for forwarding to the CORC which shall render a decision in accordance with the third step. Such transmittal must be within seven calendar days from the time the appeal was received. The grievant, the grievance clerk, and the direct party, if any, shall receive notice of said transmittal. Departmental issues which do not involve creation or revision of a Departmental policy or directive shall be answered by the Superintendent within 20 calendar days from the time the appeal was received.

(ii)   *Institutional issue.* If a matter concerns an institutional issue, the Superintendent shall render a decision on the grievance and transmit said decision, with reasons stated, to the grievant, the grievance clerk, and direct party, if any, within 20 calendar days from the time the appeal was received.

(4)   *Implementation of decisions.* The IGP supervisor or the Superintendent must verify compliance with Superintendents' responses that require some form of implementation. Documentation of compliance must be filed with the grievance record. If a decision is not implemented within 45 days, the grievant may appeal to CORC citing lack of implementation as a mitigating circumstance.

(d)   *Third step, appeal to the Central Office Review Committee (CORC).*

(1)   *Appeal.*

(i)   If the grievant or any direct party wishes to appeal to the CORC, he or she must complete and sign Form #2133 and submit it to the grievance clerk within seven calendar days after receipt of the Superintendent's written response to the grievance. The Superintendent's response form contains simple directions for appeal to the CORC. An exception to this appeal time limit may be approved by the IGP supervisor under Section 701.6(g), below.

(ii)   The grievance clerk shall transmit the signed appeal and the accompanying grievance papers to the IGP supervisor within one working day after receipt of the signed appeal statement. The supervisor must forward appeals within seven calendar days to the CORC.

(2)  *The CORC.*

(i)    The CORC shall consist of the Deputy Commissioner and Counsel, Deputy Commissioner for Correctional Facilities, Deputy Commissioner for Program Services, Deputy Commissioner for Administrative Services, and the Deputy Commissioner and Chief Medical Officer, or their designees expressly authorized to act for them.  A representative of the Office of Diversity Management will attend CORC hearings and have input on grievances alleging discrimination, but will not vote.

(ii)    The CORC functions on behalf of the Commissioner and under his authority. CORC decisions have the effect of directives.  Decisions requiring remedial action must be implemented by the facility and/or Departmental office to which they apply.

(iii)    The Director, IGP, is not a voting member of the CORC.  The Director will, however, be responsible for the administrative function of the IGP.  The Director, IGP, as the Commissioner's designee, shall ensure implementation of CORC decisions.

(3)  *CORC action.*

(i)    The IGP Central Office staff shall date stamp all appeals showing when they were received and shall notify facility grievance staffs in writing as grievances are received. The facility IGP staff shall forward a copy of the written notice of receipt to the grievant of record.  If a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC.

(ii)    The CORC shall review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the grievant, the grievance clerk, the Superintendent, and any direct parties within 30 calendar days from the time the appeal was received.

(4)  *Implementation of decisions.*  The Director, IGP, must obtain verification of compliance with CORC dispositions.  Documentation of compliance must be filed in the Central Office and facility grievance records.

## § 701.6 Procedural Safeguards.

(a)  *Advisors.*  An incarcerated individual may present or appeal a grievance unaided, or may be advised or assisted by a staff member or another incarcerated individual of his or her choosing subject to the restrictions set forth in Sections 701.2(h), above, and 701.7(c)(3), below.  At the discretion of the Superintendent, incarcerated advisors for keeplocked incarcerated individuals may be limited to incarcerated individual clerks or incarcerated representatives on the IGRC and keeplocked incarcerated individuals may be prohibited from serving as advisors to other incarcerated individuals.

(b)  *Reprisals prohibited.*  No reprisals of any kind shall be taken against an incarcerated individual or employee for good faith utilization of this grievance procedure.  An incarcerated individual may pursue a complaint that a reprisal occurred through the grievance mechanism.  A grievant shall not receive a misbehavior report based solely upon an allegedly false statement made by the incarcerated individual to the grievance committee.

|  | | NO. **4040,  Incarcerated Grievance Program** |
|---|---|---|
| DATE | 1/20/2016 | PAGE 12 OF 18 |

(c)  *Objection to IGRC representative* - No incarcerated individual will take part in the resolution of a grievance over a grievant's objection.  If a grievant objects to both incarcerated representatives and both alternate incarcerated representatives, then the two staff representatives shall hold the hearing.  An incarcerated representative may not function as a voting representative at a hearing on his or her grievance.  An alternate incarcerated representative must be utilized.  A staff representative may not function as a voting representative at a hearing on a grievance in which that staff person is a direct party.  An alternate staff representative must be utilized.

(d)  *IGRC access/movement within the institution.*

(1)  A pass system (institutional or point to point) which permits incarcerated representatives and grievance clerks to perform their IGP duties shall be developed in accordance with specifications established by the Superintendent.  Security restrictions will preclude incarcerated individuals from entering certain areas of the facility.

(2)  At any facility where a pass system is not feasible, the Superintendent must develop a procedure to ensure that the IGRC can obtain necessary information, keep within established time frames, and maintain confidentiality.  This procedure must be in writing and approved by the Director, IGP.

(3)  Upon written recommendation of the IGP supervisor and with the approval of the Director, IGP, the Superintendent may restrict or remove a specific incarcerated individual's IGRC pass privileges.

(e)  *IGRC interviews of employees.*

(1)  Formal interviews with staff members, if necessary to an IGRC investigation, should be conducted jointly by an incarcerated individual and a staff representative whenever feasible. Employees should be questioned in a diplomatic and non-adversarial manner.

(2)  If incarcerated representatives cannot accompany staff representatives on an investigation because of security restrictions, and if interviews cannot be conducted in the grievance office or through less formal means (e.g., by telephone), the incarcerated representatives shall provide the staff representatives with the questions they would like answered.  The staff representatives shall make every effort to obtain answers for the incarcerated representatives.

(f)  *Code of ethics.*

(1)  A code of ethics (see Section 701.11) for IGRC staff and incarcerated representatives, clerks, and chairpersons has been established to strengthen the credibility and effectiveness of the IGP.  Violations of this code may result in removal from the IGP.

(2)  Incarcerated representatives may be removed from the committee only in accordance with procedures set forth in Section 701.4(c), above.

(3)  The IGP supervisor is responsible for ensuring that the full-time and alternate IGRC representatives have read, understand, and received a copy of the code of ethics.

(g)  *Time limit exceptions and extensions.*

(1)  Time limit for filing a grievance or appeal.

(i)    An incarcerated individual may request an exception to the time limit for filing a grievance, or for filing an appeal to the Superintendent or to CORC. Such a request shall be in writing and shall be submitted to the grievance clerk with the grievance or appeal the incarcerated individual wishes to file.

(a)    The IGP supervisor may grant an exception to the time limit for filing a grievance based on mitigating circumstances (e.g., timely attempts to resolve a complaint informally by the incarcerated individual, etc.). An exception to the time limit may not be granted more than 45 days after an alleged occurrence.

(b)    The IGP supervisor may grant an exception to the time limit for filing an appeal of an IGRC or Superintendent's decision based on mitigating circumstances (e.g., failure to implement action required by the IGRC or Superintendent's decision within 45 days, etc.). An exception to the time limit may not be granted more than 45 days after the date of the decision unless the late appeal asserts a failure to implement the decision.

(ii)    An incarcerated individual may pursue a complaint that an exception to the time limit was denied by filing a separate grievance.

(2)    Time limit for IGP action. Time limit extensions may be requested at any level of review (e.g., time limits for holding an IGRC hearing, answering a grievance or an appeal, etc.), but such extensions may be granted only with the written consent of the grievant. Absent such extension, matters not decided within the time limits may be appealed to the next step.

(h)    *Processing grievances and appeals after transfer.*

(1)    Any response to a grievance filed by an incarcerated individual who has been transferred shall be mailed directly to that incarcerated individual, via privileged correspondence, at his or her new facility or location.

(2)    An incarcerated individual transferred to another facility may continue an appeal of any grievance. If the grievant wishes to appeal, he or she must mail the signed appeal form back to the IGP supervisor at the facility where the grievance was originally filed within seven calendar days after receipt. The IGP supervisor will refer it to the facility grievance clerk for processing.

(i)    *Processing grievances pending at release or parole.* A grievance pending at the time an incarcerated individual has been released or paroled shall be processed as follows:

(1)    If the IGRC majority determines that the grievance affects other members of the facility population and encompasses an issue that has not been reviewed by CORC within a year, the IGRC shall provide a recommendation and forward the case to the Superintendent for a determination. If the grievance affects only the grievant and encompasses an issue that has been reviewed by CORC within a year, it is subject to dismissal under Section 701.5(b)(4), above.

(2)    The Superintendent shall answer any grievance received pursuant to paragraph 1 above and any appeal pending at the Superintendent's level. The Superintendent shall make a recommendation in the case of any Departmental grievance (as defined in Section 701.5(c)(3)(i)) and forward it to the IGP supervisor. The Superintendent shall make a determination in all other cases.

(3)    Upon receipt of the Superintendent's response, the IGP supervisor shall forward all case materials to the CORC for a final disposition.

(j)    *Procedures for transient incarcerated individuals.* Each correctional facility housing a reception/ classification/transit incarcerated individual population must develop and implement a written procedure ensuring all incarcerated individuals access to the IGP. This procedure must be approved by the Director, IGP.

(k)    *File maintenance/confidentiality.*

(1)    Grievance files will be maintained in a specific area for use by the IGRC and the grievance clerk. No copies of grievance documents may go into the grievant's central file or facility file without the grievant's direct written consent. Likewise, no copies of grievance documents may go into an employee's file without the direct written consent of the employee. No grievance documents shall be disseminated to persons other than the grievant, a direct party, or an individual involved in the review process without the approval of the IGP supervisor. Any requests for grievance documents by the grievant or any direct party may be addressed through the Freedom of Information Law (FOIL) as outlined in Directive #2010, "FOIL/Access to Departmental Records."

(2)    The Superintendent is responsible to ensure the confidentiality and maintenance of grievance records. Complete grievance records must include the original grievance, responses from each level of review, the investigation, referenced documentation, and verification of implementation, when appropriate.

(3)    Grievance files shall be preserved for the current calendar year plus the previous four calendar years.

(l)    *IGRC reference materials.* The IGRC at each facility is responsible for maintaining an up-to-date set of code "A B" Departmental directives and a set of the IGP monthly index of written opinions. A copy of the IGP monthly index of written opinions must also be maintained in the facility law library.

(m)    *Emergencies.* The IGP supervisor shall refer any grievance of an emergency nature directly to the appropriate response level (Superintendent or CORC) having authority to issue an immediate or expeditious and meaningful response. An emergency shall include, but is not limited to, a situation, action, or condition in which an incarcerated individual's or an employee's health, safety, or welfare is in serious threat or danger. The supervisor will determine if a grievance falls within this category.

## § 701.7 Procedures for Incarcerated Individuals in Special Housing Units (SHU's). The IGP supervisor shall monitor and ensure the proper functioning of the grievance procedure in SHUs. The following minimal standards shall be instituted to provide SHU incarcerated individuals with access to the IGP:

(a)    *Forms and envelopes.*

(1)    A supply of incarcerated individual grievance complaint forms (Form #2131) will be maintained in all special housing areas and will be given to incarcerated individuals requesting them. The area supervisor is responsible for ensuring that a supply of these forms is available at all times. Additional forms, when needed, will be obtained from the IGP supervisor's office.

(2)    Envelopes will be given to incarcerated individuals for use in forwarding their completed grievance forms to the IGP office. The sealed envelopes will assure the confidentiality of the incarcerated individual's complaint while enroute to the IGP office.

(3)    Area supervisors will ensure that the completed grievance forms are placed in sealed envelopes, collected, and forwarded to the IGP office.

(b)    *IGP deposit boxes*. Where available, SHU incarcerated individuals shall use centrally located IGP deposit boxes to send grievance forms and IGP correspondence to the IGP office. These boxes shall be kept locked at all times. The IGP supervisor and staff representatives (IGRC Sergeant/Officer) will have the only keys to these boxes and will collect their contents at least two times per week. Broken boxes or locks will be reported to the IGP supervisor immediately, and he or she will arrange for their repair or replacement. In the interim, grievance forms shall be submitted as stated in paragraph (3) above.

(c)    *Rounds, access to IGP members and advisors*.

(1)    An IGRC staff member (Sergeant, Officer) or grievance supervisor shall make rounds of all special housing areas at a reasonable time at least once a week to allow incarcerated individuals direct access to the program. These rounds will give incarcerated individuals who are having communication problems or difficulty writing their complaints an opportunity to request and receive assistance. Staff noting problems or requests for assistance shall report them to the IGP supervisor. The IGP supervisor will work with the Deputy Superintendent(s) of Programs and/or Security to obtain necessary assistance.

(2)    The Superintendent, at his or her discretion, may grant direct access to the full IGRC, or to either an incarcerated individual member or a staff member of the IGP office for those incarcerated individuals in certain special housing areas such as reception or transient units.

(3)    Since there is a security interest in restricting confined incarcerated individuals access to other incarcerated individuals, the Superintendent may prohibit any incarcerated individual in SHU from using another incarcerated individual as an advisor or from serving as an advisor to another incarcerated individual. Staff members from the IGRC or from the facility at large can serve this function. A staff member must be willing to accept this function.

(d)    *Attendance at hearings*. A grievant confined to SHU who will be released within 30 calendar days shall be given the option of having the hearing held in his or her absence or postponed until release from confinement. The grievant's decision shall be obtained in writing. If a grievant is not scheduled for release from confinement within 30 calendar days, the hearing shall be held in his or her absence.

(e)    *Time limits*. The time limits for processing of grievances as delineated in Section 701.6(g), above, also apply to grievances submitted from Special Housing Units.

**§ 701.8 Harassment**. Allegations of employee harassment are of particular concern to the administrators of Department facilities. Therefore, the following expedited procedure for the review of grievances alleging harassment shall be followed. Note: Grievances alleging sexual harassment shall be reported to the Watch Commander for further handling in accordance with Departmental policies and shall be deemed exhausted upon filing for PLRA purposes.

(a)    An incarcerated individual who wishes to file a grievance complaint that alleges employee harassment shall follow the procedures set forth in Section 701.5(a), above.

Note: An incarcerated individual who feels that he or she has been the victim of harassment should report such occurrences to the immediate supervisor of that employee. However, this is not a prerequisite for filing a grievance with the IGP.

(b)  A grievance alleging harassment shall be given a grievance calendar number and recorded in sequence with all other grievances on the grievance clerk's log (Form #2136). All documents submitted with the allegation must be forwarded to the Superintendent by close of business that day.

(c)  The Superintendent or designee shall promptly determine whether the grievance, if true, would represent a bona fide case of harassment as defined in Section 701.2, above. If not, then it shall be returned to the IGRC for normal processing.

(d)  If it is determined that the grievance is a bona fide harassment issue, the Superintendent shall:

(1)  initiate an in-house investigation by higher ranking supervisory personnel into the allegations contained in the grievance;

(2)  request an investigation by the Office of Special Investigations; or

(3)  if the Superintendent determines that criminal activity may be involved, request an investigation by the New York State Police, Bureau of Criminal Investigation.

(e)  Once a grievance has been referred to the Superintendent and determined to be an allegation of harassment, that grievance cannot be withdrawn. The Superintendent must address the grievant's allegations.

(f)  Within 25 calendar days of receipt of the grievance, the Superintendent will render a decision on the grievance and transmit said decision, with reasons stated to the grievant, the grievance clerk, and any direct party of interest. Time limit extensions may be requested, but such extensions may be granted only with the consent of the grievant.

(g)  If the Superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his or her grievance to CORC. This is done by filing a Notice of Decision to Appeal (Form #2133) with the incarcerated grievance clerk.

(h)  If the grievant wishes to appeal the Superintendent's response to CORC, he or she must file a Notice of Decision to Appeal (Form #2133) with the incarcerated grievance clerk within seven calendar days of receipt of that response.

(i)  Unless otherwise stipulated in this Section, all procedures, rights, and duties pertaining to the processing of any other grievance as set forth in Section 701.5 above shall be followed.

§ 701.9 Allegations of Unlawful Discrimination. Allegations of acts or policies which adversely affect individuals based on race, religion, national origin, sex, sexual orientation, age, disabling condition(s), or political belief, except as provided by law, are of particular concern to the administrators of this Department and its facilities. Therefore, the following expedited procedure for the review of grievances alleging unlawful discrimination shall be followed:

(a)  An incarcerated individual who wishes to file a grievance complaint that alleges discrimination by an employee, program, policy or procedure shall follow the procedures set forth in section 701.5(a), above.

Note: An incarcerated individual who feels he/she is being unlawfully discriminated against by an employee, program, policy or procedure shall report such incident to the immediate supervisor of the employee or supervisor/administrator of such program. However, this is not a prerequisite for filing a grievance with the IGP.

(b)    A grievance alleging unlawful discriminatory acts, policies, or procedures shall be given a grievance calendar number and recorded in sequence with all other grievances on the grievance clerk's log (Form #2136).

(c)    A grievance alleging unlawful discrimination, and its related documentation, shall be forwarded to the Superintendent, with a copy to the Office of Diversity Management, within 24 hours.

(d)    The Superintendent shall initiate an in-house investigation by higher ranking supervisory personnel and/or request the Office of Diversity Management to conduct an investigation.

(e)    Within 25 calendar days of receipt of the grievance, the Superintendent will render a decision on the grievance and transmit said decision, with reasons stated, to the grievant, the grievance clerk, the Office of Diversity Management, and any direct party of interest.

(f)    If the Superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal the grievance to CORC. This is done by filing a Notice of Decision to Appeal (Form #2133) with the incarcerated grievance clerk.

(g)    If the grievant wishes to appeal the Superintendent's response to CORC, he or she must file a Notice of Decision to Appeal (Form #2133) with the incarcerated grievance clerk within seven calendar days of receipt of that response.

(h)    The Director, Office of Diversity Management, or designee, shall be present whenever CORC reviews grievance appeals regarding alleged unlawful discrimination.

(i)    Unless otherwise stipulated in this Section, all procedures, rights, and duties pertaining to the processing of any other grievance as set forth in Section 701.5 above shall be followed.

**§ 701.10 Strip Search/Strip Frisk**. The following expedited procedure for the review of grievances alleging violation of Department policy regarding strip searches or strip frisks shall be followed.

(a)    An incarcerated individual who wishes to file a grievance complaint that alleges violation of Department policy regarding a strip search or strip frisk shall follow the procedures set forth in Section 701.5(a), above.

(b)    A grievance alleging violation of Department policy regarding strip searches or strip frisks shall be given a grievance calendar number and recorded in sequence with all other grievances on the grievance clerk's log (Form #2136). All documents submitted with the allegation must be forwarded to the Superintendent by close of business that day.

(c)    The Superintendent or designee shall promptly determine whether the grievance, if true, would represent a bona fide violation of Department policy regarding strip searches or strip frisks as defined in Section 701.2(g), above. If not, then it shall be returned to the IGRC for normal processing.

(d)   If it is determined that the grievance is a bona fide strip search/strip frisk issue, the Superintendent shall Initiate an in-house investigation by the Correction Captain or functional equivalent into the allegations contained in the grievance.  This responsibility cannot be delegated. Where a Deputy Superintendent has authorized the grieved strip search or strip frisk, the Superintendent will supervise the investigation with the assistance of the Captain.

(e)   Once a grievance has been referred to the Superintendent and determined to be a bona fide strip search/strip frisk issue, that grievance cannot be withdrawn.  The Superintendent must address the grievant's allegations.

(f)   Within 25 calendar days of receipt of the grievance, the Superintendent will render a decision on the grievance and transmit said decision, with reasons stated to the grievant, the grievance clerk, and any direct party of interest.  Time limit extensions may be requested, but such extensions may be granted only with the consent of the grievant.

(g)   If the Superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his or her grievance to CORC.  This is done by filing a Notice of Decision to Appeal (Form #2133) with the incarcerated grievance clerk.

(h)   If the grievant wishes to appeal the Superintendent's response to CORC, he or she must file a Notice of Decision to Appeal (Form #2133) with the incarcerated grievance clerk within seven calendar days of receipt of that response.

(i)   Unless otherwise stipulated in this Section, all procedures, rights, and duties pertaining to the processing of any other grievance as set forth in Section 701.5 above shall be followed.

**§ 701.11 Code of ethics.** A code of ethics for IGRC staff and incarcerated representatives, clerks, and chairpersons has been established to strengthen the credibility and effectiveness of the IGP.  Violations of this code may result in dismissal from participation in the IGP.

(a)   No member shall obstruct an incarcerated individual from exercising his or her right to file a grievance, nor ridicule an incarcerated individual or his or her grievance.

(b)   A willing and tactful attitude is required in the performance of a member's duties.

(c)   No member shall expect or receive preferential treatment because of his or her participation in the IGP.

(d)   Particular duties, responsibilities, and assignments shall not be abused by any member.

(e)   Members shall not disclose confidential medical information as defined in the DOCCS Health Services Policy Manual, Item 4.10, or non-medical information of a confidential nature except where necessary in fulfilling their duties under the grievance mechanism.

(f)   Members shall be responsible for safekeeping grievance files and ensuring against unauthorized use.

(g)   No member of IGRC shall intentionally undermine the IGRC's operation or credibility.

(h)   Members of the IGRC shall have a working knowledge of the IGP and their responsibilities as members.

(i)   Members shall obey all institutional and Departmental rules and regulations.