UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CLAIRMONT DONALD,

                  *Plaintiff*,                9:22-CV-00793
-against-                                  (BKS/CFH)

SERGEANT S. LEONARD, et al.,

                  *Defendants*.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. RULE 56.1**

                                              LETITIA JAMES
                                              Attorney General
                                              State of New York
                                              Attorney for Defendant
                                              The Capitol
                                              Albany, New York 12224-0341

Nicholas W. Dorando
Assistant Attorney General, of Counsel
Bar Roll No. 703558
Tel: (518) 776-2511
Nicholas.Dorando@ag.ny.gov

                                                                          August 30, 2024

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................ 2

    ARGUMENT: ................................................................................................................ 2

    POINT I: PLAINTIFF FAILED TO COMPLY WITH THE LOCAL
    RULES ............................................................................................................................ 2

    POINT II: PLAINTIFF FAILED TO EXHAUST HIS
    ADMINISTRATIVE REMEDIES ................................................................................ 4

CONCLUSION ................................................................................................................. 8

## PRELIMINARY STATEMENT

The claims in this action arise from incidents that allegedly occurred at Great Meadow Correctional Facility ("Great Meadow"). ECF No. 1. Plaintiff, Clairmont Donald, an incarcerated individual in New York State Department of Corrections and Community Supervision ("DOCCS") custody, alleges violations of the Eighth Amendment by Defendant Sergeant S. Leonard and twelve (12) unnamed defendants pursuant to 42 U.S.C. § 1983. On May 31, 2024, Defendant Leonard submitted a Motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"), for summary judgment dismissing all of the claims in Plaintiff's Complaint on the ground that Plaintiff failed to exhaust his administrative remedies.

On July 26, 2024, Plaintiff filed an Affidavit with Exhibits, and a Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, then supplemented with a Rule 56.1 Statement. ECF Nos. 36, 37. Defendant submits the following reply in further support of the Motion for Summary Judgment and in response to Plaintiff's responsive documents.

## ARGUMENT:

### POINT I: PLAINTIFF FAILED TO COMPLY WITH THE LOCAL RULES

Rule 56.1 (b) requires that "[t]he opposing party shall file a separate Response to the Statement of Material Facts. The opposing party response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. <u>The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert</u>." L.R. 56.1 (b) (emphasis in original).

Additionally, Plaintiff was served with the Notification of the Consequences of Failing to Respond to a Summary Judgment Motion ("Notification of Consequences"). *See* ECF No. 30 at p.

3 (Notice of Motion with Notification of Consequences appended); *see also* ECF No. 30 – 7 (Declaration of Service). The first paragraph of the Notification of Consequences provides that "[u]nder Local Rule 7.1(a), to file a proper response to this motion, you must submit the following papers: . . [a] response to the defendants' statement of material facts that admits and/or denies each of the defendants' assertions in matching numbered paragraphs, and that supports each denial with citations to record evidence" ECF No. 30 at p. 3. This requirement is accompanied with a warning that "If [the Plaintiff does] not submit a proper response to the defendants' statement of material facts, the Court may deem [Plaintiff] to have admitted the defendants' factual statements." *Id*.

While Plaintiff did supplement his Motion with a "Statement Pursuant to L.R. § 56.1," Plaintiff's statement did not comply with the rules requiring "a specific citation to the record where the factual issue arises." ECF No. 37; L.R. § 56.1(b). None of Plaintiff's responses are coupled with a citation to the record. *See Generally* ECF No. 37. In addition, Plaintiff improperly incorporates additional assertions to attempt to place facts in paragraphs 5,7, and 8 in context. ECF No. 37. This is improper.

Defendants' facts should be admitted, and Plaintiff's additional assertions should be rejected. *See Maioriello v. New York State Office for People With Developmental Disabilities*, 272 F. Supp. 3d 307, 311 (N.D.N.Y. 2017) (Suddaby, C.J.) ("[T]hroughout Plaintiff's Rule 7.1 Response, she 'admits' many of the facts asserted by Defendants in their Rule 7.1 Statement but then includes additional facts and/or legal argument in those responses… Where this occurs, the Court will deem those facts admitted and disregard the additional factual assertions and/or argument that Plaintiff provides in her responses."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 417 (S.D.N.Y. 2014) (holding that plaintiff's response to defendant's Rule 56.1 Statement failed to comply with the rule because "counsel neither admits nor denies a particular fact, but instead

responds with equivocal statements such as: 'Admit, but defendant omits the balance of plaintiff's testimony'"); *Goldstick v. The Hartford, Inc.*, 00-CV-8577, 2002 U.S. Dist. LEXIS 15247, at *3, at *1 (S.D.N.Y. Aug. 19, 2002) (striking plaintiff's Rule 56.1 Statement, in part, because plaintiff added "argumentative and often lengthy narrative in almost every case the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make"). Thus, these improper assertions should be disregarded, and the facts admitted.

As a result of the foregoing the Court should deem the factual allegations averred in Defendant's Rule 56.1 Statement admitted.

**POINT II: PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES**

As previously set forth, Plaintiff was housed at Great Meadow from August 24, 2018 until September 28, 2019 and at Clinton from September 28, 2019 until November 5, 2019. Seguin Decl. at ¶ 11; Cutler Decl. at ¶ 17, Exh. "A"; Wilcox Decl. at ¶ 17, Exh. "A". During this period, Great Meadow and Clinton had, and continue to have, a fully functioning incarcerated grievance process available to incarcerated individuals. Seguin Decl. at ¶ 11; Cutler Decl. at ¶ 17, Exh. "A"; Wilcox Decl. at ¶ 17, Exh. "A". The allegations Plaintiff makes in this lawsuit—specifically, excessive force by correction staff—as described in the Complaint, are the proper subject for a grievance. Cutler Decl. at ¶ 15; Wilcox Decl. at ¶ 15; Seguin Decl. at ¶ 10; 7 N.Y.C.R.R. § 701.2 (a); *see also* ECF No. 1.

Plaintiff did not file a grievance related to his claims against Defendant Leonard at issue in this lawsuit. Cutler Decl. at ¶ 18, Exh. B; Wilcox Decl at ¶ 18, Exh. B. Additionally, Plaintiff did not fully exhaust his administrative remedies with respect to the claims in the instant action by appealing a facility-level grievance determination to CORC. Cutler Decl. at ¶ 19; Wilcox Decl. at ¶ 19; Seguin Decl. at ¶¶ 13-15.

Despite filing an Affirmation in Response to the Defendant's Motion for Summary Judgment, he does not raise any statements of fact relating to exhausting his administrative remedies. *See, generally*, ECF No. 36. Plaintiff, however, raises the issue in the memorandum of law, stating that "although the Plaintiff may have failed to comply with the [Prisoners Litigation Reform Act ("PLRA")] requirements, this does not negate the fact that 7 NYCRR § 701 et. seq. offered not available remedies to correct the violation of Plaintiff's right" to be free from violations of the Eighth Amendment. ECF No. 36 – 1 at p. 7.

Plaintiff Admits He Did Not Comply With the PLRA

Preliminarily, Plaintiff admits that he did not comply with the PLRA, which alone is dispositive of this case. ECF No. 36 – 1 at p. 7. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and *whether they allege excessive force* or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002) (emphasis added); *see also Moco v. Janik*, Nos. 22-307-pr (L), 22-348-pr (Con), 2023 U.S. App. LEXIS 27077, at *2-3 (2d Cir. Oct. 12, 2023) (Summary Order).[1] (Alleged excessive force and denial of medical care by DOCCS officials dismissed because Plaintiff failed to submit a grievance through the IGP and did not comply with those procedures, despite an alleged language barrier).

Plaintiff did not file a grievance related to his claims against Defendant Leonard at issue in this lawsuit. Cutler Decl. at ¶ 18, Exh. B; Wilcox Decl at ¶ 18, Exh. B. As set previously, Plaintiff acknowledges, and records reflect, that Plaintiff attended the orientation program where incarcerated individuals attend a presentation by a representative from the Incarcerated Grievance

---

[1] Unreported Case Law is appended.

Resolution Committee ("IGRC") about the grievance process, including how to both file and appeal a grievance. Cutler Decl. at ¶ 5, Exh. A; Dorando Decl. Exh. "A" at p. 38, l. 24 – p. 39 l. 8.

Plaintiff did not comply with the requirement that he exhaust his administrative remedies, and none of the unsupported explanations proffered in his memorandum of law excuse his failure to exhaust.

### Plaintiff's Claims of Unavailability Do Not Comport with Applicable Law

Plaintiff asserts in his memorandum, without any factual underpinning from his Affirmation, that the administrative remedies may have been unavailable to him.

Unavailability has a specific meaning under the law: "First, an administrative remedy may be unavailable when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.'… Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.' … [i]n other words, 'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it'… Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Williams v. Priatno*, 829 F.3d 118, 123-24 (2d Cir. 2016) (internal citations omitted), *quoting Ross v. Blake,* 136 S. Ct. 1850, 1859-1860 (2016). Plaintiff does not allege that the administrative scheme was opaque, nor that administrators thwarted him from taking advantage of the grievance process, and seemingly proceeds only under the theory that his administrative remedies would operate as a dead end. ECF No. 36 – 1 at p. 7.

Plaintiff's contention that the remedy he could get from the grievance process would not be sufficient does not qualify as a 'dead end.' In *Romano v. Ulrich,* the Second Circuit provided specific analysis on what would constitute a 'dead end,' noting that the Supreme Court in *Ross*

"provided the example of a prison handbook that directs inmates to submit their grievances to a particular administrative office that then disclaims the capacity to consider those petitions." *Romano v. Ulrich*, 49 F.4th 148, 155 (2d Cir. 2022) *citing Ross v. Blake*, 136 S. Ct. at 1859. In that hypothetical, the grievance procedure "is not then 'capable of use' for its purpose." *Id*. *Romano* further determined that where a plaintiff was transferred out of DOCCS custody during the time period where he could have filed a grievance rendered him unable to file any grievance against DOCCS and operated as a dead end. *Romano*, 49 F.4th at 155-56. Plaintiff's argument, then, that the Inmate Grievance Program, could not provide remedies to correct the violation of his rights, does not comport with the applicable law as it relates to an unavailable, dead-end process.

Nor does Plaintiff's assertion, that his remedies were "null and void[2]" under DOCCS Directive No. 4040 "due to Plaintiff's 'principal keepers' ('PK Draft')" transfer, assert unavailability. ECF No. 36 – 1 at p. 5. The Incarcerated Grievance Program permits incarcerated individuals to file a grievance at the facility that they are housed in, even if it pertains to another facility. *See* 7 NYCRR § 701.5 (a) (1); ECF No 36-1 at p. 18. Both Great Meadow – the alleged incident facility – and Clinton – the facility he transferred to – had a fully functioning incarcerated grievance process available to incarcerated individuals, including Plaintiff. Seguin Decl. at ¶ 11; Cutler Decl. at ¶ 17, Exh. "A." Plaintiff fails to demonstrate why he did not or could not avail himself of that process.

Plaintiff, therefore, had the ability to file a grievance at any facility at which he was housed during the relevant time period. Plaintiff's assertion in his memorandum of law, unaccompanied

---

[2] It is unclear where Plaintiff retrieved the "Null and Void" language quoted, as such language does not appear in Directive 4040. *See* 7 NYCRR § 701.1 *et seq*

7

by any factual assertion in his affirmation, is insufficient to raise an issue of law, as "[a] party seeking to defeat summary judgment 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Saeli v. Chautauqua Cty.*, 36 F.4th 445, 455 (2d Cir. 2022) *quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

Plaintiff's administrative remedies were available and were applicable to this case. However, by his own admission, he simply did not use them. Accordingly, Plaintiff's claims must be dismissed for failure to exhaust.

## CONCLUSION

For the foregoing reasons, Defendants should be granted summary judgment dismissing Plaintiff's Complaint with prejudice and in its entirety, together with such other and further relief as this Court may deem just and proper under the circumstances.

Dated: Albany, New York
August 30, 2024

        LETITIA JAMES
        Attorney General
        State of New York
        Attorney for Defendant
        The Capitol
        Albany, New York 12224-0341

        By: Nicholas W. Dorando
        Assistant Attorney General, of Counsel
        Bar Roll No. 703558
        Tel: (518) 776-2511
        Nicholas.Dorando@ag.ny.gov

TO:    Clairmont Donald (DIN: 18-A-2991)
        Sullivan Correctional Facility
        Box 116
        Fallsburg, NY 12733

Positive
As of: August 30, 2024 5:45 PM Z

# Goldstick v. Hartford, Inc.

United States District Court for the Southern District of New York

August 19, 2002, Decided

00 Civ. 8577 (LAK)

**Reporter**
2002 U.S. Dist. LEXIS 15247 *; 2002 WL 1906029

DIANE F. GOLDSTICK, Plaintiff, -against- THE HARTFORD, INC., et ano., Defendants.

**Disposition: [*1]** Defendants' motion to strike plaintiff's statement granted in part and denied in part.

## LexisNexis® Headnotes

Civil Procedure > ... > Summary Judgment > Supporting Materials > General Overview

*HN1*[⬇]  **Summary Judgment, Supporting Materials**

A proper U.S. Dist. Ct., S.D.N.Y., R. 56.1 statement submitted by a non-movant should consist of a paragraph-by-paragraph response to the movant's 56.1 statement, much like an answer to a complaint. If the non-movant asserts that a fact claimed by the movant to be undisputed is actually in dispute, the non-movant must cite evidence on the record to support its contention. It is permissible for the non-movant to provide a separate statement, apart from this paragraph-by-paragraph response, in which it lists other facts it claims to be in dispute. However, this separate statement is not a substitute for the paragraph-by-paragraph response. The non-movant, particularly if represented by counsel, should not leave it to the Court to cull from this separate statement the pieces of evidence which would support the contentions of the non-movant asserted in its paragraph-by-paragraph response without citation. Rule 56.1 statements are not argument. They should contain factual assertions, with citation to the record. They should not contain conclusions, and they should be neither the source nor the result of cut-and-paste efforts with the memorandum of law. A Rule 56.1 statement that contains the same turns of phrase, if not the identical whole paragraphs, as the memorandum of law is improper.

**Counsel:** For Diane F Goldstick, PLAINTIFF: Steven G Eckhaus, Eckhaus & Olson, New York, NY USA.

For The Hartford, Inc, Hartford Financial Services Group Inc, Bryan F Murphy, James J Keating, Josef J Skryzypek, Jane Tutoki, DEFENDANTS: Scott J Wenner, Christina L Feege, Littler Mendelson, New York, NY USA.

**Judges:** Lewis A. Kaplan, United States District Judge.

**Opinion by:** Lewis A. Kaplan

## Opinion

### ORDER

LEWIS A. KAPLAN, *District Judge.*

Defendants move to strike plaintiff's Rule 56.1 Statement, submitted in opposition to defendants' motion for summary judgment dismissing the

complaint, on the ground that it fails to comply with Local Civ. R. 56.1 in that it goes beyond admitting or denying that the propositions of fact set forth in defendants' Rule 56.1 Statement in fact are undisputed and contains a great deal of extraneous, argumentative material, much allegedly based on inadmissible evidence.

> *HN1*[⬆] "A proper 56.1 statement submitted by a non-movant should consist of a paragraph-by-paragraph response to the movant's 56.1 statement, much like an answer to a complaint. If the non-movant asserts that a fact claimed [*2] by the movant to be undisputed is actually in dispute, the non-movant *must* cite evidence on the record to support its contention. It is permissible for the non-movant to provide a separate statement, apart from this paragraph-by-paragraph response, in which it lists other facts it claims to be in dispute. However, this separate statement is *not* a substitute for the paragraph-by-paragraph response. The non-movant, particularly if represented by counsel, should not leave it to the Court to cull from this separate statement the pieces of evidence which would support the contentions of the non-movant asserted in its paragraph-by-paragraph response without citation.

> "*Rule 56.1 statements are not argument.* They should contain factual assertions, with citation to the record. They should not contain conclusions, and they should be neither the source nor the result of 'cut- and-paste' efforts with the memorandum of law. A rule 56.1 statement that contains the same turns of phrase, if not the identical whole paragraphs, as the memorandum of law is improper." *Rodriguez v. Schneider, 1999 U.S. Dist. LEXIS 9741*, *No. 95 Civ. 4083 (RPP), 1999 WL 1102760*, *1 n.3 (S.D.N.Y. June 29, 1999).

 [*3]

The plaintiff's Rule 56.1 Statement here does not comply with the rule. While in most cases it does admit or deny defendants' descriptions of the allegedly uncontested facts on a paragraph-by-paragraph basis, it adds argumentative and often lengthy narrative in almost every case the object of which is to "spin" the impact of the admissions plaintiff has been compelled to make. In consequence, the response to the 84 number assertions set forth in defendants' Rule 56.1 Statement is 41 pages long and, whether so intended or not, a manifest evasion of the page limitation on plaintiff's memorandum in opposition to the motion for summary judgment.

Accordingly, defendants' motion is granted to the extent that so much of plaintiff's responses as consists of anything more than (a) the admission or denial of the assertions set forth in defendants' Rule 56.1 Statement and the citations to the record, and (b) the section headed "additional facts" is stricken. It is denied in all other respects.

SO ORDERED.

Dated: August 19, 2002

Lewis A. Kaplan

United States District Judge

**End of Document**



Neutral

As of: August 30, 2024 5:45 PM Z

# *Moco v. Janik*

United States Court of Appeals for the Second Circuit

October 12, 2023, Decided

22-307-pr (L); 22-348-pr (Con)

**Reporter**

2023 U.S. App. LEXIS 27077 *; 2023 WL 6632952

Robert Moco, Plaintiff-Appellant, v. J.M. Janik, Corrections Officer, Philip Voltz, Defendants-Appellees,[*] New York State Department of Corrections, New York Department of Corrects Medical (Gowanda), Defendants.

**Notice:** PLEASE REFER TO *FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1* GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**Prior History: [*1]** Appeal from a judgment of the United States District Court for the Western District of New York (Geraci, J.).

## LexisNexis® Headnotes

Civil Procedure > ... > Justiciability > Exhaustion of Remedies > Administrative Remedies

Civil Rights Law > ... > Prisoner Rights > Prison Litigation Reform Act > Exhaustion of Administrative Remedies

Civil Procedure > ... > Summary Judgment > Appellate Review > Standards of Review

Civil Procedure > Judgments > Summary Judgment > Entitlement as Matter of Law

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Appropriateness

*HN1*[🔽] **Exhaustion of Remedies, Administrative Remedies**

The appellate court reviews de novo both a district court's determination regarding exhaustion of administrative remedies under the PLRA, and grant of summary judgment. Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Civil Procedure > ... > Justiciability > Exhaustion of Remedies > Administrative Remedies

Civil Rights Law > ... > Prisoner Rights > Prison Litigation Reform Act > Exhaustion of Administrative Remedies

*HN2*[🔽] **Exhaustion of Remedies, Administrative Remedies**

The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. The PLRA requires proper exhaustion, meaning exhaustion in compliance with an agency's

---

[*] The Clerk of the Court is respectfully directed to amend the caption as set forth herein.

deadlines and other critical procedural rules. For prisoners confined by New York State Department of Corrections and Community Supervision, the relevant administrative remedy is the Inmate Grievance Program. *N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5*.

Civil Rights Law > ... > Prisoner Rights > Prison Litigation Reform Act > Exhaustion of Administrative Remedies

Evidence > Burdens of Proof > Allocation

*HN3*[ ] **Prison Litigation Reform Act, Exhaustion of Administrative Remedies**

A grievance process is available if an incarcerated person can use it to obtain the relief he or she seeks. The test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available. The Supreme Court has recognized three non-exclusive circumstances in which a grievance process may not be available for purposes of the PLRA and a court may excuse a failure to exhaust: (1) when the grievance process is a simple dead end because officers are unable or consistently unwilling to provide relief; (2) when the administrative scheme is so opaque that it is, practically speaking, incapable of use; and (3) when prison administrators thwart inmates seeking relief by means of machination, misrepresentation, or intimidation. Because failure to exhaust is an affirmative defense, defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute. If the defendants meet this initial burden, administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors—for example, threats from correction officers—rendered a nominally available procedure unavailable as a matter of fact.

Civil Rights Law > ... > Prisoner Rights > Prison Litigation Reform Act > Exhaustion of Administrative Remedies

*HN4*[ ] **Prison Litigation Reform Act, Exhaustion of Administrative Remedies**

In the context of administrative remedies under the PLRA, a grievance generally must be filed within 21 days of the incident giving rise to the complaint. *N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a)(1)*. However, the regulations provide that a grievance program supervisor may allow a complaint more than 21 days after the date of the incident, but the supervisor may not grant an exception if the request was made more than 45 days after an alleged occurrence. *N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g)(1)(i)(a)*.

Civil Procedure > Appeals > Record on Appeal

*HN5*[ ] **Appeals, Record on Appeal**

The appellate court may affirm on any ground with support in the record.

**Counsel:** FOR PLAINTIFF-APPELLANT: BRIAN MARC FELDMAN (Franco A. Mirolo, on the brief), Harter Secrest & Emery LLP, Rochester, NY.

FOR DEFENDANTS-APPELLEES: SEAN P. MIX, Assistant Solicitor General of Counsel (Barbara D. Underwood, Solicitor General, Andrea Oser, Deputy Solicitor General, on the brief), for Letitia James, Attorney General State of New York, Albany, NY.

**Judges:** PRESENT: JOSEPH F. BIANCO, SARAH A. L. MERRIAM, MARIA ARAÚJO KAHN, Circuit Judges.

**Opinion**

**SUMMARY ORDER**

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff Robert Moco ("Moco") appeals from the district court judgment entered January 27, 2022, (1) dismissing for failure to state a claim his *Eighth Amendment* claim alleging excessively tight handcuffs, and (2) granting summary judgment in favor of defendants on the remaining claims for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), *42 U.S.C. § 1997e(a)*. At all relevant times, Moco was incarcerated and in the custody of the New York State Department of Corrections and Community Supervision **[*2]** ("DOCCS"). Moco brought several *Eighth Amendment* claims pursuant to *42 U.S.C. § 1983* alleging the use of excessive force and denial of medical care by DOCCS officials at the Gowanda Correctional Facility ("Gowanda") on January 27 and 30, 2016. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we reference only as necessary to explain our decision.

*HN1*[↑] We review *de novo* both a district court's determination regarding exhaustion of administrative remedies under the PLRA, *Williams v. Priatno, 829 F.3d 118, 121-22 (2d Cir. 2016)*, and grant of summary judgment, *Summa v. Hofstra Univ., 708 F.3d 115, 123 (2d Cir. 2013)*. "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011)* (quoting *Fed. R. Civ. P. 56(a)*).

*HN2*[↑] The PLRA provides: "No action shall be brought with respect to prison conditions under *[42 U.S.C.] section 1983* . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *42 U.S.C. § 1997e(a)*; *see also Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002)* ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular **[*3]** episodes, and whether they allege excessive force or some other wrong."). The PLRA requires "proper exhaustion," meaning exhaustion in "compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford v. Ngo, 548 U.S. 81, 90, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006)*. For prisoners confined by DOCCS, the relevant administrative remedy is the Inmate Grievance Program ("IGP"). *See N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5*; *Williams, 829 F.3d at 119*.

As an inmate within DOCCS, Moco was required to submit his grievance through the IGP. Moco does not dispute that a grievance process existed at Gowanda, that Gowanda staff gave him written materials explaining the IGP when he arrived in 2016, and that he did not comply with those procedures. Instead, Moco contends that the grievance process was not available to him at the time of the incidents because his ability to read English was "extremely limited." Joint App'x at 447. Moco was born and raised in Albania, and prior to moving to the United States in 2001, spoke only Albanian. Although Moco acknowledged that he understood that the written materials supplied to him by Gowanda staff "provided certain guidance" regarding the grievance process, he asserted that he was "generally unaware of the specific procedures" due to his "limited grasp of the English language" **[*4]** and "relied on library staff for assistance." *Id.* at 447-48. Thus, Moco argues that the district court erred in granting summary judgment on the basis of exhaustion because he created "a genuine issue as to his inability to comprehend the grievance process in January 2016[.]" Appellant's Br. at 20. We disagree.

*HN3*[↑] A grievance process is available if an incarcerated person can use it to obtain the relief he or she seeks. See *Ross v. Blake, 578 U.S. 632, 643, 136 S. Ct. 1850, 195 L. Ed. 2d 117 (2016)*. "We have held that the test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Lucente v. Cnty. of Suffolk, 980 F.3d 284, 311-12 (2d Cir. 2020)* (alteration adopted) (internal quotation marks and citations omitted). The Supreme Court has recognized three non-exclusive circumstances in which a grievance process may not be available for purposes of the PLRA and a court may excuse a failure to exhaust: (1) when the grievance process is a "simple dead end" because officers are "unable or consistently unwilling to provide" relief; (2) when the administrative scheme is "so opaque that it [is], practically speaking, incapable of use"; and (3) when "prison administrators thwart inmates" seeking relief **[*5]** by means of "machination, misrepresentation, or intimidation." *Ross, 578 U.S. at 643-44*. "Because failure to exhaust is an affirmative defense, defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." *Hubbs v. Suffolk Cnty. Sheriff's Dep't, 788 F.3d 54, 59 (2d Cir. 2015)* (alteration adopted) (internal quotation marks and citations omitted). "If the defendants meet this initial burden, administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors—for example, threats from correction officers—rendered a nominally available procedure unavailable as a matter of fact." *Id*. As set forth below, we agree with the district court that there is no genuine issue of material fact as to whether the grievance process was rendered unavailable to Moco, for purposes of the PLRA, due to his alleged lack of proficiency in the English language.

In granting summary judgment for the defendants, the district court correctly concluded that the uncontroverted evidence in the record demonstrated that, from the perspective of the prison officials, "[b]y all appearances, Moco could speak and **[*6]** understand English in a manner sufficient to understand the written grievance-procedure materials, to make requests, and to protect his rights." *Moco v. Janik, No. 17-CV-398, 2021 U.S. Dist. LEXIS 220298, 2021 WL 5309744, at *4 (W.D.N.Y. Nov. 15, 2021)*. That uncontroverted evidence included the following: (1) Moco entered DOCCS custody in November 2015, at which time DOCCS officials noted on intake forms that Moco spoke and understood English; (2) during his intake interview, which was conducted in English, Moco expressed interest in obtaining a G.E.D. and pursuing a vocational trade; (3) between December 2015 and September 2021, while at Gowanda, Moco met with more than one "Offender Rehabilitation Coordinator"[1] ("ORC"), conversed in English, and never requested a translator to participate in these meetings or to communicate with DOCCS staff; and (4) at his first meeting with an ORC, Moco "asked . . . how to get court papers concerning his criminal offense" and discussed other issues, including "inmate programming, an active order of protection, his parole board and release dates, and emergency contact information." Joint App'x 511-12. As the district court noted, faced with this uncontroverted evidence, Moco did not "marshal any evidence that Gowanda officials were or should have been **[*7]** aware of his difficulties with the English language, such that they should have translated the grievance procedures into Albanian even without a request." *Moco, 2021 U.S. Dist. LEXIS 220298, 2021 WL 5309744, at *4*.

Thus, the situation here is clearly distinguishable from the circumstances in *Ramirez v. Young, 906 F.3d 530 (7th Cir. 2018)*, upon which Moco heavily relies to support his argument. In *Ramirez*, there was evidence that "[the plaintiff's] language

---

[1] Offender Rehabilitation Coordinators "work[] with inmates on their rehabilitation and meet[] with them to discuss and address any complaints and/or concerns they might have." Joint App'x at 511 ¶ 3.

barrier was not a secret to the prison"; indeed, "[t]he prison officials knew—and recorded their awareness—of his inability to understand[.]" *Id. at 538*. The record in *Ramirez* also contained evidence that "the prison itself prevented a friendly fellow prisoner from quietly translating the prison orientation for him." *Id. at 537*. Under those circumstances, the Seventh Circuit determined that the remedies were rendered unavailable to the plaintiff and excused his failure to exhaust under the PLRA. *Id. at 538*. In reaching this decision, the court emphasized that it was "not holding that a prisoner's subjective unawareness of a grievance procedure excuses his non-compliance[,]" but rather that the prison had not taken the "required reasonable steps" to inform him of the grievance procedures. *Id.*

Moco's reliance on the Sixth Circuit's unpublished decision in *Reyes-Martinez v. Woosley, No. 21-5125, 2021 U.S. App. LEXIS 26203 (6th Cir. Aug. 30, 2021)*, is similarly misplaced. **[*8]** In *Reyes-Martinez*, the court held that the district court erred in granting summary judgment on the exhaustion issue where, *inter alia*, there was evidence that: (1) the plaintiff informed the prison of his limited English-language skills upon his arrival at the facility; (2) he never received a Spanish-language version of the handbook containing the procedure; and (3) once he learned of the grievance procedures, the prison disregarded his requests for certain information necessary to file the grievance and "separated him from [an] inmate who was assisting him with the grievances (which were all filed using an English-language form) in order to prevent Reyes-Martinez from pursuing his grievances." *Id. at *7*; *see also id. at *5-7*.

Here, in contrast to *Ramirez* and *Reyes-Martinez*, there is no evidence in the record that prison officials were aware that Moco could not understand the grievance procedure due to a language barrier, or that they thwarted his compliance with the grievance procedures in any way. Moreover, unlike in *Ramirez* where the "record shows that nothing gave [the plaintiff] even a clue about the grievance process," *906 F.3d at 537*, Moco's own sworn statement admits that he had understood that the prison had provided him with written "guidance" regarding **[*9]** grievance procedures.[2] Notwithstanding his general understanding of the existence of a grievance procedure, Moco never sought a translation of the grievance procedure from DOCCS staff or any clarification as to what the procedure required until months after the alleged incidents. By that point, the time allowed under the IGP to file a grievance related to the incidents had already expired.[3]

Although Moco suggests that the district court improperly made factual findings regarding his level of proficiency in the English language, the district court made no such findings. Instead, the district court correctly determined that the uncontroverted facts in the record demonstrated that any language deficiencies did not render the grievance process unavailable to Moco for purposes of the PLRA. Moco proffered no evidence that Gowanda personnel had reason to know about his alleged inability to read or understand the grievance procedure materials or that they thwarted his ability to utilize the grievance procedure in any way. Nor

---

[2] The district court also noted: "Within two months after the January 2016 incidents, Moco was able to write two coherent letters in English to DOCCS staff about the incidents." *Moco, 2021 U.S. Dist. LEXIS 220298, 2021 WL 5309744 at *4*. Moco suggests that the district court should not have relied upon those letters with respect to his English-language skills because "there was no evidence in the record as to whether [he] wrote that letter himself or to the extent to which his English had improved over time." Appellant's Br. at 21. However, any factual dispute regarding whether Moco wrote those letters is immaterial to the summary judgment determination. The other uncontroverted evidence in the record is sufficient to demonstrate that the grievance procedure was not rendered unavailable to him due to any limitations on his English-language skills.

[3] *HN4*[↑] A grievance generally must be filed within 21 days of the incident giving rise to the complaint. See *N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a)(1)*. However, the regulations provide that a grievance program supervisor may allow a complaint more than 21 days after the date of the incident, but the supervisor may not grant an exception "if the request was made more than 45 days after an alleged occurrence." *Id. § 701.6(g)(1)(i)(a)*.

did Moco set forth evidence that the procedure was "so opaque that it [became], practically speaking, incapable of use" due to his limited English-language skills **[*10]** or for any other reason. *Ross, 578 U.S. at 643*.

Accordingly, Moco's failure to exhaust available administrative remedies under the PLRA is not excused, and summary judgment was warranted in favor of defendants on all claims. Because we conclude that summary judgment was warranted for failure to exhaust administrative remedies on all claims related to the events on the two dates at issue, including the handcuffing claim, we need not address the district court's dismissal of the handcuffing claim under *Rule 12(b)(6)* for failure to allege a sufficient injury. *See Nat'l R.R. Passenger Corp. v. McDonald, 779 F.3d 97, 100 (2d Cir. 2015)* ("*HN5*[↑] We may affirm on any ground with support in the record.").

\* \* \*

We have considered Moco's remaining arguments and conclude that they are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

**End of Document**